No. 33,754

IRA A. WILSON and URNA B. WILSON, *Appellees*, v. THE TEXAS COMPANY, *Appellant*.

(76 P. 2d 779)

Opinion filed March 5, 1938.

*Charles W. Roberts, Lloyd S. Roberts,* both of Winfield, *Robert C. Foulston, George Siefkin,* both of Wichita, and *Sol H. Kaufman,* of Tulsa, Okla., for the appellant.

*W. E. Holmes, Mark H. Adams, Howard L. Baker, Charles E. Jones* and *Edward F. Arn,* all of Wichita, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was a suit by the owners of land to cancel the assigned portion of an oil and gas mining lease, on the ground it had been forfeited, and to recover statutory damages and attorney's fees under the provisions of G. S. 1935, 55-202. The defendant assignee leveled a general demurrer against the amended petition, which was overruled. The defendant elected to stand on its demurrer. The trial court canceled the assigned portion of the lease, quieted title thereto in the plaintiffs and rendered judgment against defendant in the sum of $450. The money judgment consisted of statutory damages in the sum of $100 and $350 as reasonable attorney's fees. From that judgment defendant appeals.

No question is raised concerning the sufficiency of the procedure for the cancellation of a forfeited lease, or the amount of damages, or concerning the fact that defendant refused to execute a release of its rights under the assignment. The sole question is whether the lease was terminated as to the assigned portion thereof. The answer must be found in the lease contract and in certain other facts pleaded. The amended petition disclosed:

On October 10, 1935, plaintiffs were and are now the owners of a quarter section of land situated in Cowley county. On that date they executed and delivered to Earl F. Wakefield an oil and gas mining lease on this land. On March 26, 1936, Wakefield assigned to defendant, the Texas Company, the south half of the lease. After the execution and delivery of the assignment, but prior to the expiration of the first year and on or about April 15, 1936, Wakefield drilled and completed a well on the north half of the quarter section. It was a dry hole, and the well was abandoned and all equipment and supplies were removed. This was the only test well which had been drilled on the lease. The defendant, assignee, paid no rentals on the *south half* on or before October 10, 1936, which was the end of the first year.

The pertinent portions of the lease contract provided:

"1. Witnesseth, That the said lessor, for and in consideration of one and no/100 dollars cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of lessee to be paid, kept and performed, has granted, demised, leased and let, . . .

"2. (This paragraph provided for a primary term of five years.)

"3. If no well be commenced *on said land* on or before the 10th day of October, 1936, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, . . . the sum of one hundred and sixty dollars, which sum shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred. (Italics inserted.)

"4. Should the first well drilled *on the above-described land* be a dry hole, then, and in that event, if a second well is not commenced *on said land* within twelve months from the expiration of the last rental period which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided.

And it is agreed that upon the resumption of the payment of rentals, as above provided, that the last preceding paragraph hereof, governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments. (Italics inserted.)

"5. If the lessee shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years herein first mentioned.

"6. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, ·. . . and it is hereby agreed in the event this lease shall be assigned as to a part or as to parts of the above-described lands and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease insofar as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rentals."

This identical lease contract was before us for construction in a suit brought by the same plaintiff to cancel the north half of the lease on the ground the delay rentals had not been paid by the lessee, Wakefield, on or before October 10, 1936. We held the lease contract had not been terminated and that the lease was not subject to cancellation. (*Wilson v. Wakefield,* 146 Kan. 693, 72 P. 2d 978.) While the lessee had paid no delay rental on or before October 10, 1936, he had completed the drilling of a well before October 10, 1936. After discussing the various terms of the lease contract, we said:

"It must have been intended the lease should not terminate on October 10, 1936, unless no well was commenced within the first year *and* the delay rental was not paid on or before ·October 10, 1936. In other words, it appears to have been intended the lease should not terminate on October 10, 1936, unless lessee failed in both of the contingencies mentioned. Unless the contract is so construed the provision concerning the commencement of a well within the first year becomes utterly meaningless. It follows the fair intendment was that if no well were commenced within the first year then a delay rental became due on October 10, 1936. In the instant case a well having been not only commenced but completed within the first year, we conclude no delay rental payment was intended on or before October 10, 1936, and that it did not become due until October 10, 1937." (p. 696.) (Italics inserted.)

The defendant insists the trial court erred, in the instant case, in holding the lease had terminated as to the assigned portion thereof. It contends the commencement and drilling of one well is all that was required under the contract to hold the entire lease until October

10, 1937, and that it was immaterial where on the land, or by whom, the well was drilled. On the other hand, plaintiffs contend that although one well was drilled by the lessee it was not drilled on the portion assigned to defendant, and hence the lease terminated as to that portion unless a delay rental of $80 was paid thereon on or before October 10, 1936. Plaintiffs further urge the well had not been drilled by the lessee at the time of the assignment. As to the latter fact, defendant counters with the contention that such fact is immaterial, as the entire lease could be protected by the drilling of one well at any time within the first year and that it was so drilled.

Both parties concede the question is one of first impression in this state and admit they have been unable to find that the question has been decided elsewhere. Our search has disclosed no decision squarely in point. In order to avoid confusion it is well to bear in mind, at the outset, that this is not a case involving a question of implied covenants to develop. Nor are we concerned with the question of drilling offset wells in order to prevent drainage. Defendant has cited numerous cases from other jurisdictions in which it was held that the drilling of a well, from which oil is produced in paying quantities, on one portion of a lease will also protect the assigned portions thereof against forfeiture. Many of them pertain to an extension of the lease contract beyond its fixed or primary term under contract provisions similar to those contained in paragraph five of the lease in the instant case. The question before us, however, does not pertain to the extension of the lease beyond its primary term of five years, and paragraph five of the present lease contract is not applicable. Defendant does not contend that paragraph five is determinative or even involved in the question presented, but cites cases dealing with a situation covered by that paragraph to show it is well established that where a definite condition is prescribed to keep a lease alive, and such condition is met by the lessee or assignee, the entire lease will be kept alive. While the principles stated in those cases appear to be a correct statement of the law as applied to the facts involved, the decisions do not reach the precise point before us, and we prefer to place our decision upon the construction of the contract before us and upon the facts pleaded. Of course the question of whether the conditions prescribed by the instant lease contract, in order to keep it alive, have been performed, is the essence of this lawsuit. That question will be treated presently.

The real issue is whether under the terms of the contract the lease

had terminated as to the assigned portion thereof. In *Harter v. Edwards*, 108 Kan. 346, 195 Pac. 607, it was said:

"The contract prescribed the terms which kept it alive and fixed the conditions which terminated it." (p. 349.)

The contract here involved did not require a producing well in order to keep the lease alive beyond the first year. It required the commencement of one well within the first year or the payment of rentals on or before October 10, 1936. How much rental? It required $160 to protect the entire lease, or 160 acres. The well was not only commenced but it was completed within the first year. It follows no delay rentals were due on any part of the lease prior to October 10, 1937. Plaintiffs, in effect, urge that when part of the lease was assigned the requirements to keep it alive increased. We fail to find any express or implied provision in the lease contract which, in the event of an assignment of one half or any other portion thereof, required the drilling of an additional well or wells on the assigned portion or portions thereof prior to October 10, 1936, in order to protect such portion or portions from forfeiture. Obviously if one well, under the terms of the contract, protected the entire lease until October 10, 1937, then the drilling of an additional well or wells was not required. It must likewise be clear that if one well took the place of rental payments on the entire 160 acres then no rental payments were due on October 10, 1936, to protect an assigned portion of the lease. The lease did not provide nor contemplate that in the event of an assignment of one half of the lease the lessors should be entitled to receive $160 rental from the lessee and an additional $80 rental from the assignee. Nor did it provide or contemplate that lessors were to receive in addition to one well an extra rental payment from such assignee in the sum of $80 or any other amount. Let us pursue the problem a step further. Assuming the 160-acre lease was divided into ten tracts of 16 acres each, and assignments of nine of such tracts were made, then on plaintiffs' theory, even though the one required well was drilled by the lessee, the nine assignees would be required to drill nine additional wells in the first year or would be required to pay $144 in rentals. In our judgment such a result was not intended by the contract. We think it was the intention of the parties that one well drilled within the first year *at any location* on the 160-acre lease should protect the entire lease until October 10, 1937, and not merely the portion thereof on which the well was located. Such intention appears not only from

one single provision of the lease contract but from the contract as a whole. Paragraph three of the contract did not provide "In the event a portion of the lease is assigned, and if no well be commenced *on the assigned portion of the land* on or before the 10th day of October, 1936, this lease, as to the assigned portion thereof, shall terminate, unless the assignee on or before that date shall pay or tender to the lessor such sum of money as the number of acres assigned shall bear to the total acreage of the lease." On the contrary, the contract reads, "If no well be commenced *on said land.*" Obviously, the land referred to was any portion of the 160 acres. While paragraph four is not determinative of the precise question raised in the instant case, we there find the same intention clearly expressed. The contract reads: "Should the first well drilled *on the above described land* be a dry hole, then, and in that event, if a second well is not commenced *on said land,*" etc. Clearly, under the contract only one well was required, and it could have been drilled anywhere on the 160-acre tract.

Plaintiffs, however, contend the contract provided for a severance of the lease in that it expressly permitted assignment in whole or in part. The lease contract did provide for assignment, but it also expressly provided that its covenants were extended (not enlarged or decreased) to the assigns of the parties. (Par. 6.) Under the covenants of the lease the commencement of only one well, and unrestricted as to location, was required prior to October 10, 1936, in order to grant relief from the payment of all rentals for the next year.

In support of plaintiffs' contention that the assignment provision made the lease divisible they quote from Mills and Willingham, Law of Oil and Gas, § 146, p. 214, as follows:

"The assignee in severalty of a part of the lease is not a sublessee. This results from the divisibility of the commercial lease in its present form. It contemplates that when part has been assigned the several portions are thereafter (for certain purposes only) to be regarded as separate leases. So the assignee may pay his delay rentals and maintain his lease or may fail to pay and forfeit without being affected by, and without affecting, the unassigned portion. Such assignee is, therefore, liable on the covenants of the lease only so far as they pertain to the portion assigned to him."

It will be observed the author in the above statement inserted in parenthesis the words "for certain purposes only," and then proceeded to state for what purposes the several portions of the lease are to be regarded as separate leases. One of the purposes stated is to enable an assignee to protect his portion of the lease against forfeiture, even

though the lessee or some other assignee may forfeit the portion retained by or assigned to him. That is exactly what the assignment clause in the instant lease provides. If, therefore, rentals had been due on October 10, 1936, on the entire lease, the defendant assignee could have paid the rentals due on the south eighty and thus kept its lease thereon alive, although the lessee had failed to pay the rentals due on the north eighty and the lease on his eighty had terminated. The author says another purpose for which the assigned portion shall be regarded as a separate lease is that the assignee shall be liable on the covenants of the lease only so far as they pertain to the portion assigned to him. But what application can those purposes have to circumstances in the instant case, where the rentals on the entire 160 acres had been paid by the performance of the condition which the lease contract substituted for the payment of the entire rental, to wit, the commencement of one well? Obviously none.

The parties concede the cases cited by them do not decide the precise issues presented in the instant case. We have, however, examined them in connection with the contentions urged, and find that they pertain primarily to issues which we previously indicated are not involved in the instant case. In the case of *Nigh v. Haas*, 139 Kan. 307, 31 P. 2d 28, the question of severance by assignment was raised, but that issue really passed out of the case under the ruling that the assigned portion of the lease had been abandoned. The case of *Cowman v. Phillips Petroleum Co.*, 142 Kan. 762, 51 P. 2d 988, cited by both parties, dealt with the forfeiture of an assigned portion of a lease, which was treated, with the consent of appellants, as though both portions of the lease were owned by the same party. The real issues were nondevelopment, implied covenants, waiver of right of forfeiture and extension of the lease beyond the primary term as a result of production. In view of the admission of the parties heretofore indicated, it is unnecessary to discuss each of the cases cited. In the light of what has been said, it follows the judgment must be reversed with directions to enter judgment for the defendant. It is so ordered.