No. 34,005

THE UNION CENTRAL LIFE INSURANCE COMPANY, *Appellee*, v. EM-
PIRE OIL AND REFINING COMPANY (now CITIES SERVICE OIL
COMPANY), *Appellant*.

(84 P. 2d 911)

Opinion filed
December 10, 1938.

*R. H. Bennett,* of Wichita, *A. M. Ebright, Hayes McCoy, Murray H. Hodges, S. N. Hawkes* and *R. O. Mason,* all of Bartlesville, Okla., for the appellant.

*E. J. Taggart,* of Wellington, *W. L. Cunningham, D. Arthur Walker* and *Wm. E. Cunningham,* all of Arkansas City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This appeal was taken by defendant from an order overruling its demurrer to plaintiff's petition. The pertinent portions of the petition and exhibits thereto may be stated or quoted as follows: In November, 1932, John D. Kahm was the owner of the north half and the fractional southwest quarter of section 14, township 35, range 2 east, containing 476.71 acres, more or less, in Sumner county, subject to a mortgage held by plaintiff. On November 18, 1932, Kahm executed to the Empire Oil and Refining Company, the name of which was changed to Cities Service Oil Company, the defendant here, three separate oil and gas leases, one covering the southwest quarter of section 14, another covering the northwest

quarter of section 14, and the other covering the northeast quarter of section 14, all in township 35, range 2 east. Other than the description of the land covered, these leases were identical in all respects, except that two of them were to begin as of August 1, 1932, and the other as of November 18, 1932. Each was to remain in force for a term of six years and as long thereafter as oil and gas could be produced, subject to payment of rentals as therein provided. Each lease contained the following provisions, specifically commented upon by counsel:

"6. If operations for the drilling of a well for oil or gas are not begun on said land on or before (six months from the date of the lease), this lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender to the lessor or for the lessor's credit in (the Home National Bank, Arkansas City, Kansas) . . . the sum of ($80) as rental, which . . . shall operate to confer on the lessee the privilege of deferring the commencement of such well for six months; *provided, however,* the default in whole or in part in such payment or any subsequent payment occasioned by mistake, inadvertence, oversight, failure of mails, error in calculation or other misfortune, shall not operate to terminate this lease for thirty days after receipt of written notice from lessor of such default and not then if such payment be made within such thirty days. In like manner and upon like payments or tenders of said amount the commencement of said well may be further deferred for additional periods of six years [months]. . . .

"7. The lessee shall not be bound by . . . the assignment of the rentals or royalties hereunder until furnished with an abstract of title to said land prepared by a bonded abstracter at least thirty days before said rentals or royalties are due showing to the lessee's satisfaction that assignee is the owner of the interest claimed; otherwise payment to purchaser's predecessor in title shall bind such purchaser. . . .

"9. It is understood and agreed that all considerations recited herein cover not only the privileges granted to the date when the first well is to be commenced, but also the lessee's option to extend this lease from time to time and any and all other rights conferred. As an additional consideration for the execution of this lease, lessee hereby agrees that if during the period of this lease or during any period for which drilling has been delayed by the payment herein provided for, there shall be drilled on adjoining land and within three hundred feet of any line of said leased land an oil or gas well producing sufficient oil or gas to pay all costs of drilling and equipment thereof and of production therefrom and a reasonable profit the lessee will with reasonable diligence begin and prosecute the drilling of an offset well on said leased land; *provided, however,* That if said well on the adjoining land is a paying gas well, producing gas only, the said lessee may pay to the lessor the same amount of royalty as herein provided for a gas well on the leased premises in lieu of drilling an offset well; . . .

"12. Lessee shall have the right at any time to surrender and cancel this lease in whole or in part, after which all payments and liabilities thereafter

accruing hereunder as to the portion canceled (any rentals may be apportioned on an acreage basis) shall cease and determine.

"13. This lease and all its terms and conditions shall extend to and be binding upon the heirs, devisees, executors, administrators, and successors and assigns of the parties hereto."

It was further alleged in the petition that thereafter and on December 9, 1932, John D. Kahm, being still the owner of all of the land above mentioned, for value received, executed and delivered to plaintiff a certain instrument in writing whereby he did sell, transfer and assign to plaintiff all his right, title and interest in and to the rents, royalties, rights and benefits from the above-mentioned and described oil and gas lease. A copy of this assignment is attached as an exhibit. And that thereafter and on February 9, 1933, plaintiff duly notified the defendant, in writing, of this assignment by mail. A copy of the letter is attached as an exhibit. This reads:

"This company holds an assignment from John D. Kahm of the oil land and gas lease in your favor on the N½ of the fractional SW¼ of section 14, township 35, range 2 east of the sixth principal meridian, Sumner county, Kansas, containing 476.71 acres, and if you desire for your protection, I shall obtain from the home office of this company a photostatic copy of the lease."

That defendant replied to such letter as follows:

"We have your letter of the 9th stating that your company holds an assignment from John D. Kahm covering the above-described land (John D. Kahm lease, N½ Frl. SW¼ section 14-35-2E, Sumner county, Kansas), and that future benefits derived from our lease should be paid to your company. Before we can change our records to show this transfer, it is necessary that we have the assignment or a true copy thereof for examination. If you will furnish same to us, it will be appreciated."

That on February 21, 1933, plaintiff replied to defendant as follows:

"In accordance with your letter of February 14, I inclose herewith copy of assignment of lease, rents and profits given to this company by John D. Kahm."

and enclosed therewith a copy of the assignment, the pertinent portions of which are as follows:

"ASSIGNMENT OF LEASE, RENTS AND PROFITS

"For value received, I hereby sell, transfer and assign, to the Union Central Life Insurance Company, of Cincinnati, Ohio, its successors and assigns, all my right, title and interest in and to the rents, profits, revenues, royalties, rights and benefits from the following-described property: The north half and the fractional southwest quarter of section fourteen (14), township thirty-five (35), range two (2), east of the sixth principal meridian.

"It is especially provided and understood that in signing this assignment that all crops are to be retained by John D. Kahm. The signing of this is merely for the purpose of the oil and gas lease that is on said premises. . . .

"I further make, constitute and appoint, during the term of this assignment, as hereinbefore set out the Union Central Life Insurance Company, its agent, or attorney, true and lawful attorney for me and in my name, to renew any and all leases of said premises, from time to time, or agree to renew the same and also make such new leases, agreements and writings in regard to the leasing of said premises, and to make or have made any and all repairs necessary for the preservation of said property, or that may be required for the better renting of same, as it or they shall think proper."

This instrument was duly acknowledged, but appears not to have been recorded with the register of deeds.

It is alleged that defendant received this last letter, with the true copy of the assignment, on or about February 25, 1935, and accepted the assignment as full compliance with and as a showing to the lessee's satisfaction that the plaintiff, as assignee, was the owner of and entitled to the rental, and waived any further compliance therewith by making proper transfer on its books and records so far as the southwest quarter of section 14 was concerned, but failed and neglected to make transfers on its books so far as the northwest quarter and the northeast quarter of section 14 were concerned; that defendant made no further request or requirement for any additional showing of plaintiff's right to collect and receive the rentals specified in the leases, and although it held the leases and claimed all the rights and privileges granted by the terms of the leases, it failed, neglected and refused to pay plaintiff or to make a deposit of the leases or rental moneys therein provided to the credit of this plaintiff, as required by the leases and the assignment in the Home National Bank of Arkansas City, which depository never had been changed, but on the contrary deposited said lease money and rentals to keep the leases in force in that bank to the credit of John D. Kahm in sums stated, aggregating $800, which sums were by the bank paid to Kahm. These allegations pertain to the payments on the two leases covering the northwest quarter and the northeast quarter of section 14. While not definitely stated in the petition, it appears therefrom that the rentals for the lease covering the fractional southwest quarter of the section were deposited to the credit of plaintiff.

It was further alleged that during all that time (until this action was brought, April 29, 1937) defendant has kept and held the leases,

exercising and claiming the right to exercise all the privileges and benefits thereof, and claiming the leases were and are in full force and effect, and has not surrendered them or any part thereof; that by reason of the premises defendant is justly indebted to plaintiff in the sum of $800, and that plaintiff has demanded payment of such rentals, which payment defendant has refused. The prayer is for judgment against defendant for $800, with interest and costs.

Appellant argues that each of the leases in question is an "unless" lease; that if the lessee did not commence drilling operations the lease terminated by its own terms in six months from its date unless the lessee paid or tendered the rental; that under such a lease the lessee has the option to continue the lease in force by the payment of rentals; that he has not bound himself to pay such rentals, and if he does not do so the lessor cannot maintain an action against him to recover them. This point is well taken. The question was before the court in *O'Neill v. Risinger,* 77 Kan. 63, 93 Pac. 340. There the lease contained a similar provision. No well was started within six months, or at any time, and no rental was paid. After the six months had expired the lessor sued the lessee for the rent. It was held the lessee had a mere naked option to continue the lease in force and was under no duty or obligation to pay the rentals. This court directed that the demurrer to the petition should be sustained. Other cases to the same effect are: *Eastern Oil Co. v. Smith,* 80 Okla. 207, 195 Pac. 773; *Snodgrass v. South Penn Oil Co.,* 47 W. Va. 509, 35 S. E. 820; *Hays, Appellant, v. Forest Oil Co.,* 213 Pa. 556, 62 A. 1072; *Van Etten et al. v. Kelly,* 66 Ohio St. 605, 64 N. E. 560.

The leases before us differ materially from those considered in *Farlow v. Frankson,* 110 Kan. 197, 203 Pac. 299, and *Benson v. Nyman,* 136 Kan. 455, 16 P. 2d 963, where the rentals were to be paid until the royalties from producing wells on the premises equalled or exceeded the rentals. There is no such provision in the leases being considered here. No case is cited by counsel, and our own research discloses none in which the lessor was permitted to recover rentals where the lease merely gave the lessee the right or privilege of continuing the lease in force by the payment of rentals.

Quite a little is said in the briefs and arguments about mistakes with respect to sending the assignment to defendant and its action thereon. That there were mistakes seems obvious. Plaintiff's first letter to defendant described the lease as the "N½ of the fractional

SW¼" and used the word "lease" in the singular, as though there were but one. This described only 80 acres, but the acreage was stated to be 476.71. The other letters between the parties contained abbreviated descriptions, which were at best misleading, perhaps inaccurate. But defendant did not depend upon plaintiff's letters. It asked for the assignment, or a true copy thereof, which was furnished. This contained a correct description of the three quarter sections, "the north half and the fractional southwest quarter of" the proper section, but still used the word "lease" in the singular. Defendant entered its assignment on its records as pertaining to but one quarter section, when it described three, and thereafter paid rentals on the separate leases to the parties entitled thereto, as shown by its records, which appear to be mistakes of defendant.

Appellee cites the provision of the lease (paragraph 6) to the effect that default in payment of rentals occasioned by mistake, etc., shall not operate to terminate the lease "for thirty days after receipt of written notice from lessor of such default and not then if such payment be made within such thirty days." We see nothing in this provision which binds the lessee to pay within the thirty-day period. It could still decline to pay rents, so far as this provision is concerned, without being liable in an action for rentals. Before the lessee is liable in an action for rentals there must be found in the lease a promise or duty on his part to pay rentals. The lease fixed the conditions under which the lessee was to pay rentals. (*Wilson v. Texas Company,* 147 Kan. 449, 453, 76 P. 2d 779.) We find in the lease a right of the lessee to pay rentals by certain specified times, and if the failure to pay by such times was occasioned by mistake, the right to pay within thirty days after the mistake was called to his attention by the lessor. But we find no obligation or duty imposed upon the lessee to pay in either event.

There is some discussion in the briefs as to the rights of the plaintiff as an assignee of the rents compared with what would have been the rights of the lessor if the assignment had not been made. We think the assignee had the same rights; no greater, no less, with respect to the receipt of rentals, than the original lessor had before the assignment was made. The fact that the assignment described all the land and referred to the leases as though there were but one is of no importance. The lessee held separate leases. It could pay on one and not pay on the others. It should be noted that the assignment gave the assignee the right to renew the leases, or, if they

expired, to make new ones. So, with respect to the payment of rentals, the lessee could handle the matters with the assignee just as it could have handled them with the lessor if no assignment had been made.

Appellee calls attention to its allegations that the lessee did in fact pay the rentals to the original lessor, and alleged the leases were still in force. This action is not framed to determine whether all the leases are still in force; it is simply an action to recover a money judgment for rentals. But with respect to the payments alleged to have been made to the lessor, either those were valid payments or they were not. If those payments were valid, appellant owes nothing for rentals. To have any basis to recover anything plaintiff must take the position that the payments were not valid; hence, whether they were made to the lessor or not is immaterial and of no more effect than if the money had been given to some third person, or not paid to anyone. Plaintiff can recover only if defendant had a duty to pay plaintiff. As we read the lease, it had no duty to pay anyone; it had only the right or option to make such payments, and from this it necessarily follows that it had no duty to pay plaintiff.

Appellee refers to paragraph 12 of the lease and argues that it limits to some extent the effect of the provisions of paragraph 6, hereinbefore discussed. There was a somewhat similar clause and a similar argument made respecting it in *O'Neill v. Risinger,* supra. With respect to it the court said:

"The clause in the lease providing that the lessee shall have the right at any time to terminate the lease by surrendering it canceled is a general provision, and must be construed in connection with the other clause which expressly declares that a failure to drill within six months or to pay rent shall terminate the lease. The latter clause does not pretend to exclude the first from becoming operative." (p. 66.)

We think the same conclusion applies here.

Other questions are discussed in the briefs, but we find it unnecessary to consider them. From what has been said it follows that the judgment of the trial court should be reversed, with directions to sustain the demurrer to the petition. It is so ordered.