**GULF OIL CORPORATION, Appellant,**

v.

**Paul B. PREVOST et al., Appellees.**

**No. 15491.**

Court of Civil Appeals of Texas, San Antonio.

July 14, 1976.

Jesse P. Luton, Jr., Joe M. Green, Jr., Morgan L. Copeland, Houston, A. W. Walker, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellant.

Mann, Castillon, Freed & Kazen, John E. Mann, Carlos Castillon, Laredo, for appellees.

CADENA, Justice.

Defendant, Gulf Oil Corporation, appeals from an order of the district court denying its motion for summary judgment and granting summary judgment in favor of plaintiffs declaring a certain oil and gas lease terminated as to a portion of the leased premises because of defendant's failure to commence drilling operations or pay delay rentals on such land on or before May 30, 1974.

Plaintiffs are (1) Paul B. Prevost, individually and as trustee for Marie Helen Prevost, Adriane Prevost, and Phillipe Prevost; (2) Paul E. Prevost; (3) Olga J. Prevost; and (4) Christelle Prevost de Riva Palacio.

The question to be decided is whether the timely commencement of drilling operations by an assignee on his geographical portion of land covered by an oil and gas lease excuses the payment of delay rentals by the owner of the mineral estate in the remaining geographical portions of the leased premises. We conclude that the question must be answered in the affirmative and, consequently, reverse the judgment of the trial court and here render judgment in favor of defendant.

On May 30, 1968, plaintiffs, as lessors, executed an oil and gas lease to James A. Mayo, lessee, covering 570.7 acres of land in Webb County. Part of the leased premises, consisting of 505.3 acres, lies west of U.S. Highway 83, while the remaining 65.4 acres, the land involved in this litigation, are lo-cated east of such highway. On October 7, 1968, the original lessee assigned all of his interest to defendant. On April 9, 1973, defendant, by means of a "farmout" agreement, assigned certain of its rights to the 505.3 acres lying west of the highway to Ramco, Inc. According to the agreement, Ramco was required to drill a well to a depth of 10,000 feet "or to production at a depth below 8,000 feet, whichever is the lesser," on the 505.3-acre tract within a specified time. The agreement gave Ramco the right to take minerals down to, but not below, 100 feet beneath the depth of such first well. On July 5, 1973, Ramco assigned its rights under the farmout agreement to Consolidated Oil & Gas, Inc. Defendant has not assigned its rights to the 65.4 acres lying east of the highway.

The lease is for a term of 10 years from May 30, 1968, "and as long thereafter as oil, gas or other minerals is [sic] produced from said land hereunder in paying quantities." It is well settled that such language creates in the lessee a determinable fee simple estate in the minerals in place. *Stephens County v. Mid-Kansas Oil & Gas Co.*, 113 Tex. 160, 254 S.W. 290 (1923).

The lease contains a drill/rental clause, which is in the usual "unless" form and which reads as follows:

If operations for drilling are not commenced on said land on or before one year from this date [May 30, 1968], this lease shall then terminate as to both parties, unless on or before such anniversary date Lessee shall pay or tender to Lessor * * * the sum of $570.70 (being $1.00 per acre), herein called rental, which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. In like manner and upon like payments or tenders annually the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term.

The "assignment" clause of the lease provides:

The rights of either party hereunder may be assigned in whole or in part  *  *  * but no change or division in ownership of the land, rentals or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee.  *  *  * In event of assignment of this lease as to a segregated portion of said land, the rentals payable hereunder shall be apportionable as between the several leasehold owners ratably according to the surface area of each, and default in rental payment by one shall not affect the rights of other leasehold owners hereunder.

The delay rentals were timely paid for the years 1969–1973, both inclusive. According to the terms of the lease, the lease thus remained in effect until May 30, 1974, on which date it would terminate unless drilling operations had been commenced "on said land" or the specified delay rental was paid.

In March 1974, Consolidated began drilling operations, under the farmout agreement which had been assigned to it, on the 505.3-acre tract lying west of the highway, and such drilling operations were in progress on May 30, 1974, the date on which the next delay rental would be payable in the absence of commencement of drilling operations. The well was completed in June 1974, and is now producing gas in paying quantities.

Plaintiffs recognize that the lease remains in full force and effect as to the 505.3 acres on which the well is located, but claim that defendant's failure to either commence drilling operations within the tract consisting of 65.4 acres or to pay $65.40 as its proportionate share of the total delay rental before May 30, 1974, resulted in the expiration of the lease as to the 65.4 acres.

Assignment clauses such as that found in the lease before us are generally included in oil and gas leases in order to permit an assignee of only a geographical portion of the leased premises to continue the lease in effect as to his portion by paying his pro rata share of the rental, irrespective of the failure of the owners of other geographical portions of the premises to drill or pay rental. Such clauses make the interests of partial assignees of the lessee separate insofar as the payment of delay rental is concerned. But provisions of that type give no clues as to the effect of commencement of drilling operations on segregated portions of the leased premises following one or more partial assignments of the lessee's interest.

It is clear that, in the absence of any assignment of any portion of the lessee's interest, the commencement of drilling operations on any portion of the leased premises has the effect of continuing the lease in effect as to all of the leased premises without payment of delay rental. Thus, if defendant, without assigning any portion of its interest, had commenced drilling operations on the 505.3 acres, such operations would have kept the lease in effect as to the entire 570.7 acres without payment of rental. *Tennant v. Matthews,* 19 S.W.2d 1115 (Tex.Civ.App., Eastland 1929, writ ref'd).

There is no sound basis for applying a different rule where there has been a partial assignment of lessee's interest. "On principle, where there has been a partial assignment, compliance with the drilling clause by a well on any part of the leased premises should relieve the owners of the other portions from the obligation [sic] to pay delay rental just as the lessee would have been released from that obligation [sic] as to the entire tract had he kept it intact." Merrill, The Partial Assignee—Done In Oil, 20 Texas L.Rev. 298, 306 (1942).

In *Wilson v. Texas Co.,* 147 Kan. 449, 76 P.2d 779, 782 (1938), the court, after commenting that the partial assignment should not effect an increase of lessor's revenue, said:

The lease did not provide nor contemplate that in the event of an assignment of one-half of the lease the lessors should be entitled to receive $160 rental [the total amount of the specified rental] from the

lessee and an additional $80 rental [one-half of the delay rental] from the assignee. Nor did it provide or contemplate that lessors were to receive in addition to one well an extra rental payment . . . . Let us pursue the problem a step further. Assuming the 160-acre lease was divided into ten tracts of 16 acres each, and assignments of nine of such tracts were made, then on plaintiff's theory even though the one required well was drilled by the lessee, the nine assignees would be required to drill nine additional wells in the first year or would be required to pay $144 in rentals. In our judgment such a result was not intended by the contract.

In *Walker v. Lane,* 233 S.W. 634 (Tex.Civ. App., Fort Worth 1921, writ ref'd), the lease embraced 1,602 acres. Lessee assigned his rights to 800 acres. The lease contained the "unless" form of drill/rental clause. Assignee timely commenced drilling operations on the 800 acres which had been assigned to him, but no such operations were commenced on the 802 acres retained by assignor, nor did assignor make any payment of rental. The court said (233 S.W. at 635):

> Walker, the original lessee, had the right to procure the drilling of a well by some person other than himself, and the performance of the contract he obtained from Whiteside [his assignee] would have inured to his benefit in preserving the lease in full force and effect as to the 800 acres retained by him, . . . .

Both reason and authority support the conclusion that the commencement of the well by defendant's assignee on the 505.3-acre tract had the effect of continuing the lease in force not only as to such 505.3 acres but also as to the remaining 65.4 acres retained by defendant without payment of delay rental. *Dacamara v. Binney,* 146 S.W.2d 440, 441 (Tex.Civ.App., San Antonio 1940, writ dism'd); *Pearson v. Black,* 120 S.W.2d 1075, 1079 (Tex.Civ.App., Eastland 1938, no writ; *Duke v. Stewart,* 230 S.W. 485, 488 (Tex.Civ.App., Beaumont 1921, no writ); *Sinclair Prairie Oil Co. v. Campbell,* 164 F.2d 907 (5th Cir. 1947); *Meacham v. Halley,* 103 F.2d 967, 971 (5th Cir. 1939); *Carrothers v. Stanolind Oil & Gas Co.,* 134 F.Supp. 191 (N.D.Tex.1955); 2 Williams and Meyers, Oil and Gas Law § 407.2 (1975); 3 Summers, The Law of Oil and Gas § 512 (Perm.Ed.1958); Junz, Oil and Gas § 3.54 (1964).

■ Plaintiffs assert that the authorities on which we rely involved not merely the commencement of drilling operations but also completion of, and production from, a well. This attempted distinction is unsound. In the first place, the "unless" clause refers to the commencement of drilling operations, not to the completion of a producing well. In the second place, the distinction can be accepted as controlling only if we accept the erroneous theory that the determinable fee simple created by the common Texas form of oil and gas lease does not "vest" in the lessee until production of minerals in paying quantities is obtained. This is contrary to established law in this State. *Stephens v. Mid-Kansas Oil & Gas Co.,* supra. The production of oil or gas in paying quantities is a limitation of the estate created and not a condition precedent to the vesting of such estate. *Texas Co. v. Daugherty,* 107 Tex. 226, 176 S.W. 717 (1915). The conveyance creates a present defeasible title, not an estate to commence in the future.

■ Plaintiffs also insist that the "unless" clause is not a limitation of the estate conveyed but is a covenant running with the land. Plaintiffs concede that the "unless" clause "does not obligate the Lessee to either drill or to pay delay rentals." This concession is fatal to plaintiff's contention, unless we are prepared to accept the notion of a covenant which imposes no obligation on the covenantor. In any event, the "unless" clause uniformly has been held to be a limitation upon the estate granted and not a condition subsequent or covenant running with the land. *W. T. Waggoner Estate v. Sigler Oil Co.,* 118 Tex. 509, 19 S.W.2d 27

(1929); *Humble Oil & Refining Co. v. Davis,* 296 S.W. 285 (Tex.Comm'n App.1927); *Guerra v. Chancellor,* 103 S.W.2d 775 (Tex.Civ. App., San Antonio 1937, writ ref'd).

The judgment of the trial court is reversed. Since the undisputed facts establish as a matter of law that the lease in question has not been terminated as to any portion of the leased premises, the trial court erred in denying defendant's motion for summary judgment. Judgment is here rendered granting defendant's motion for summary judgment and declaring that the lease remains in full force in effect as to the 65.4 acres involved in this litigation.