## BROYLES et ux. v. GILMAN et al. (No. 1106.)

(Court of Civil Appeals of Texas. El Paso. May 20, 1920. Rehearing Denied June 17, 1920.)

1. **Trial &⇒192—Court did not err in assuming admitted fact that defendant was assignee of oil lease.**

Where petition to cancel an oil lease alleged that certain defendants claimed an interest in the land under a sale or transfer, proof by such persons of a formal transfer was rendered unnecessary, in view of further fact that the plaintiff testified he received checks from such persons to cover rentals, and there was no error on part of court in assuming as an admitted fact that such persons were in privity with the lessee as assignees of his interest.

2. **Mines and minerals &⇒79(4)—Payment of rental by one of two assignees of oil lease payment for both.**

Where $20 was payable quarterly as rental on an oil lease assigned by lessee to two persons, and each of the assignees gave lessee a check for $20 to cover the rental of his undivided interest and one of the checks was dishonored, there was no default by the assignees of the lease; the assignees filing a joint answer in an action by the lessor to cancel the lease, it being immaterial to a lessor as to who pays rentals due.

3. **Mines and minerals &⇒79(1)—Acceptance of quarterly rentals sufficient consideration for optional privileges in oil lease.**

Acceptance of rentals provided for in an oil lease on failure of lessee to drill a well constituted a sufficient consideration for the optional privileges granted, and made the contract, which originally had only a nominal consideration of $1, valid.

Appeal from District Court, Eastland County; Joe Burkett, Judge.

Action by J. N. Broyles and wife against R. F. Gilman and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

B. W. Patterson, of Cisco, and Alexander & Baldwin, of Ft. Worth, for appellants. J. J. Butts, of Cisco, for appellees.

HIGGINS, J. On May 22, 1916, J. N. Broyles and wife, lessors, leased to R. F. Gilman, lessee, 320 acres of land situate in Eastland county. The material portions of the lease contract are as follows:

The lessors, in consideration of $1 paid, granted, demised, and let unto the lessee all the oil, gas, etc., in and under the land, together with the exclusive right unto the lessee to operate, drill for, and mine said oil, gas, etc., and to lay and maintain pipe lines, etc. The lease was for the term of five years from date, and as much longer as gas, oil, etc., was produced in paying quantities, yielding to the lessors one-eighth of all the oil produced, delivered free of expense into the tanks or pipe lines to the lessors' credit. The contract contains these further provisions:

"Lessees agree to commence a well on said premises within one year from the date hereof, or pay lessor 25 cents an acre per annum, payable quarterly in advance from the 22d day of May, 1917, until said well is commenced or this lease surrendered, which surrender is made complete and binding upon failure of lessee to make such payment. And the drilling of such well shall be full consideration to lessor for grant hereby made to lessee, with exclusive right to drill one or more additional wells on the premises during the existence of the lease. * * *

"The above rental shall be paid lessor in person or by check deposited in post office, directed to J. N. Broyles, Nimrod, Texas. And it is further agreed that upon the payment of one dollar lessee shall have the right to surrender this lease, and thereafter shall be released and discharged from all payments, obligations, covenants, and conditions herein contained, whereupon this lease shall be null and void, and that all conditions, terms, and limitations between the parties hereto shall extend to their heirs, personal representatives, and assigns."

The form of this contract is the same as that construed by the Ft. Worth Court of Civil Appeals in the recent case of Hitson v. Gilman, 220 S. W. 140, not yet [officially] reported.

On September 26, 1918, Broyles and wife filed this suit against Gilman, Frances Ruben, and A. L. Cohen to cancel and set aside the above-described contract. In the petition it was alleged that the defendants Ruben and Cohen claimed some interest in the land through or under some kind of sale or transfer from Gilman; that the contract gave Gilman no right to sell or transfer, but; if he had such right, then such assignees acquired their interest subject to the burdens, conditions, defenses, and limitations contained in the lease. The defendants Ruben and Cohen filed a joint answer, setting up that they were the assignees of Gilman, and urging various defenses which it is not necessary now to mention. Upon trial before a jury a peremptory instruction was given in favor of the defendants, in accordance wherewith verdict was returned and judgment rendered. Error is assigned to the action of the court in giving the peremptory instruction; various propositions being urged why it was erroneously given.

[1] By the third proposition it is urged that the giving of the peremptory charge was improper, because there was no evidence to show that defendants Cohen and Ruben were legal assignees of Gilman, or owners of the

&⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

leasehold interest in the land, and, since Gilman had disclaimed, there was no evidence upon which the peremptory charge could be based. It is true there was no direct evidence offered of an assignment by Gilman to Ruben and Cohen, but plaintiff's petition alleged that Ruben and Cohen claimed an interest in the land under a sale or transfer from Gilman; and the allegations of the petition thus placed those defendants in privity with Gilman under the lease contract, and proof by said defendants of a formal transfer from Gilman was thus rendered unnecessary, in view of these allegations and the further fact that the plaintiff, J. N. Broyles, upon the stand testified that in May, 1918, he received checks from Ruben and Cohen to cover the rental installment due May 22, 1918, and that these two parties had paid the rental installment at the previous quarter. His testimony clearly shows that he recognized Ruben and Cohen as being assignees of Gilman, and it is quite evident from the record that upon the trial no question was raised as to Ruben and Cohen being assignees, and that they were treated by the parties as such. In the state of the pleading and the record as a whole, there was no error upon the part of the court in assuming as an admitted fact that Ruben and Cohen were in privity with Gilman as assignees of Gilman's interest in the land under the lease contract.

[2] The fifth proposition is as follows:

"This lease was a mere option, running first for a period of 12 months, and then from quarter to quarter, and as it provided that failure to pay any rental in advance should be a complete surrender of the lease, and the evidence showing that part of the rentals were paid, plaintiffs had the right to refuse to receive further rentals and forfeit the lease, which they did, and for this reason the court erred in giving the peremptory charge."

It is true that so far as the lessee was concerned it was entirely optional whether he commenced a well or paid the quarterly rentals as stipulated in the contract. The testimony shows that no well had been commenced upon the land, but that Gilman paid the quarterly rentals up until the time Ruben and Cohen acquired his rights, and that such payments were accepted by the appellants. It further appears that Ruben and Cohen paid the quarterly rental which became payable three months preceding May 22, 1918, and that same was accepted by appellants. By virtue of the cash payment made at the time the lease was executed and these quarterly payments thereafter made, the optional rights of the lessee and his assignees were secured until May 22, 1918. Those payments constituted the consideration which supported the contract and the optional right of renewal or extension of the privileges for the period of

3 months from May 22, 1918, by making payment of the quarterly installment due May 22, 1918. There being 320 acres of land covered by the lease, a payment of $20 on or before May 22, 1918, would have secured to Ruben and Cohen an extension of their optional rights for 3 months. The record discloses that by letter dated May 14, 1918, the defendant Ruben wrote appellants as follows:

"Am sending $20 in payment for my share of 320 acres. The other half will be paid by Mrs. Anna Cohen. If you do not receive the rest of the rental for the land, please let me know."

In this letter she inclosed a check for $20. On May 18th defendant Cohen sent J. N. Broyles a check for $20, with letter as follows:

"I am inclosing $20 for 6 months rental for my share or half interest in the 320 acres assigned to Cohen & Ruben by Gilman. Please send me receipt."

The two checks of Ruben and Cohen were received by J. N. Broyles and cashed by him at his local bank. The check of Ruben, however, was dishonored by the bank upon which it was drawn, and Broyles repaid to the bank which cashed it for him the amount of the check. It thus appears that the defendant Ruben had failed to make any payment on or before May 22, 1918, as required by the contract; but the defendant Cohen did pay $20, which was received by appellants, and which they have never repaid her, nor offered to refund. The total amount due on May 22, 1918, was $20, and this amount was received by appellants from Cohen. It made no difference to the appellants which one of the assignees paid the rental due May 22, 1918. That was no concern of his. He had the right to insist upon the payment of $20 as a condition precedent to the further extension of the optional rights of the assignees, but the lessors had no right to arbitrarily say by whom the stipulated amount should be paid. The defendant Cohen had the right to insist upon her co-owner paying her share of the stipulated rental, but they filed a joint answer in which they pleaded the said payment of $20 made by the defendant Cohen, which payment covered the quarterly installment due May 22, 1918, and that by reason of such payment there had been no default in the payment of the installment due on May 22, 1918.

In view of the payment of this $20 by the defendant Cohen, which was received and accepted by the appellants, the dishonor of the checks of Ruben is of no importance.

[3] The sixth proposition is as follows:

"Where there is only a nominal consideration, the real consideration being the drilling of a.

well for oil, and both the drilling and the payment of rentals are entirely at the option of the lessee, with further right given the lessee alone to surrender the lease at any time by payment of $1, or other nominal amount, the contract is unilateral and void for want of mutuality, and this status of the contract renews itself at the end of .each option period. This being the character of this contract and evidence showing these facts, it was error to give the peremptory charge."

Upon the facts heretofore stated it appears that all rental installments had been paid up to and including the one due on May 22, 1918, and that all subsequent maturing installments have been tendered to the appellants. These payments made by the original lessee and his assignees, and the acceptance thereof by the appellants, constituted a sufficient consideration for the optional privileges granted to the lessee and his assigns, and made the contract valid. The testimony of the appellant, J. N. Broyles, shows that the contract was read to him before he signed it, and that he understood the same, and there is nothing in the evidence which would relieve him from the legal effect of the contract which he made.

The first, second, and fourth propositions are as follows:

First. "Where there is any evidence upon an issue, the question should be submitted to the jury. Plaintiffs having alleged the failure of defendants to drill and to pay rentals, and the plaintiffs' evidence having shown that no well was drilled, and that the rental on one-half of the land was not paid when due, the issue was for the jury, and it was error to give the peremptory charge for defendants."

Second. "The peremptory charge was error, because payment of the rental was not made on one-half of the land, and, this having been shown by uncontradicted evidence, the court should have charged the jury to find for plaintiffs for an undivided one-half of the land, or should have left that question to the jury for determination."

Fourth. "The peremptory charge was error, for the reason that there was no provision in the lease for the pro rata payment of the rentals, the contract authorized the payment only on all the land, and, the evidence having shown payment on only one-half the land, the question of cancellation should have been left to the jury."

It will be noted that these last-mentioned propositions all proceed upon the theory that the payment of $20 on May 22, 1918, by the defendant Cohen, would not operate to save the interest of the defendant Ruben. Upon the view heretofore expressed, this was a matter which did not concern the appellants. Twenty dollars was the correct amount due on May 22, 1918. The defendant Cohen is not complaining, but has answered jointly with her codefendant, Ruben, setting up the payment of this $20 as being in full satisfaction of the entire amount due on May 22, 1918, and in this condition of the pleadings, and the manifest purpose of the defendant Cohen to have this payment operate as an extension of the optional rights of herself and her codefendant for a period of 3 months from May 22, 1918, it should be permitted to so operate.

Upon the views expressed, we are of the opinion that this case should be affirmed. It is a hard contract against the lessors, but a man has a right to enter into an onerous contract, if he wishes to do so. The plaintiff's own testimony wholly disproves his allegation of fraud being practiced upon him, and it appears that he accepted the quarterly rentals, and in this condition of the record there is no reason why the contract is not valid and binding upon him. The opinion of Judge Conner in the Hitson-Gilman Case, supra, recognized the validity of the contract, and the reversal was based solely upon the ground that the court below erred in excluding the lessor's testimony that the recited consideration in the lease was not in fact paid. In the present case Broyles admits that he received the cash payment, and payments covering every rental installment up to and including May 22, 1918, and it further appears that the subsequent installments have been duly tendered.

The judgment is affirmed.