## AMERADA PETROLEUM CO. et al.
### v. DOERING et al.
#### No. 8521.

Circuit Court of Appeals, Fifth Circuit.

Dec. 9, 1937.

Geo. M. Conner and William R. Watkins, both of Fort Worth, Tex., for appellants.

C. A. Goeth and John J. Cox, both of San Antonio, Tex., and Walker Saulsbury, of Temple, Tex., for appellees.

Before HUTCHESON and HOLMES, Circuit Judges, and STRUM, District Judge.

HUTCHESON, Circuit Judge.

The suit was brought to cancel an oil and gas lease, held by defendants Amerada Petroleum Corporation and Rycade Oil Corporation, upon 5,298.9 acres of land of plaintiffs, in Frio county, Tex., and for general equitable relief.

Plaintiffs contended that defendant lessees forfeited their rights under their lease on the land in question, and that such lease terminated by: (1) Failure to pay the rental due on October 27, 1934; (2) cessation of use of such land for the purposes for which it was leased during the period from March 29, 1934, to December 5, 1934; (3) abandonment of the use of the leased premises with the intention to abandon same during the period from March 29, 1934, to December 5, 1934. They also contended that defendant lessees failed to exercise due diligence in the exploration and development of plaintiffs' land from March 29, 1934, to December 5, 1934, and that, because of such lack of diligence, plaintiffs are entitled to an order of court requiring defendant lessees to diligently explore and develop their land within a reasonable period of time on penalty of cancellation of the lease.

Defendant lessees contended that they had not forfeited their rights under the lease, and that it had not been terminated for any of the reasons stated by plaintiffs. They contended also that they were not obligated to pay the rental on the lease on October 27, 1934, because at that time they were using gas from a gas well drilled on plaintiffs' land in the drilling of another well off plaintiffs' land about twelve miles, for which gas they had offered to pay plaintiffs, and that such use of gas from a gas well on plaintiffs' land constituted the same a producing well within the meaning of the lease, and excused payment of rent due while such use was going on. They denied any abandonment of plaintiffs' land or any intention to abandon it and also denied that they have ceased to use plaintiffs' land for

purposes for which the same was leased. They asserted that after they ceased to use gas from plaintiffs' gas well in December, 1934, they tendered plaintiffs $50 per year under a clause in the lease which provides that lessee could pay such sum to lessor for each gas well on leased premises where gas was not being used commercially off the premises, and such payment would constitute said well a producing well. They alleged further that they tendered all rentals due after December, 1934, but that plaintiffs had refused to accept same. Finally, they contended that they have diligently explored and developed plaintiffs' land for productivity of oil and gas.

In a full trial on the merits all of these contentions were developed and examined. Upon full and exhaustive findings of fact the District Judge concluded:

(1) There was no forfeiture nor termination of the oil and gas lease on October 27, 1934, by virtue of the failure of defendant lessees to pay or tender the delay rentals, for the reason that defendant lessees were producing gas from the Doering well No. 1 for profit. (2) There was no cessation of use of the said 5,298.9-acre tract of land belonging to the plaintiffs in this case, for the purposes for which the tract of land was leased during the period from March 29, 1934, to December 5, 1934. (3) There was no intention on the part of defendant lessees to abandon or to give up their leasehold interest in such land, and there was no abandonment. (4) During the period from March 29, 1934, when defendants brought the gas well in on the leased premises, to December 5, 1934, when the well was capped, it would have appeared to an ordinarily prudent and experienced operator, having the interest of both lessors and lessees in mind, that good faith and due diligence would have required additional drilling to be done. That defendants, having neither prosecuted nor begun additional drilling during that period, had failed to prosecute developments upon the land with the good faith and diligence the lease required. (5) Plaintiffs, while not entitled to a decree either of cancellation or of forfeiture, are entitled to a decree that the lease shall be terminated, canceled, and held for naught except as to 10 acres around the gas well already drilled, unless defendant lessees shall, within six months from the date of the decree commence and thereafter diligently prosecute the drilling of an additional well to the formation known as the Austin Chalk or shall discover oil in paying quantities at a lesser depth.

On April 3, 1937, a decree was entered in accordance with these conclusions. This appeal is from that decree.

But one question is presented; whether the decree is supported by the evidence. The principles which the decree sought to apply are well settled. Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801; Cosden Oil Co. v. Scarborough, 5 Cir., 55 F.2d 634; Sauder v. Mid-Continent Petroleum Corporation, 292 U.S. 272, 54 S.Ct. 671, 78 L.Ed. 1255, 93 A.L.R. 454.

Under the rule of these decisions, though defendants have not abandoned a lease, and though no ground for absolute forfeiture is shown, if it appears from the evidence that defendants are not reasonably proceeding with the developments required by the implied covenants of the lease, and that plaintiffs' remedy at law is inadequate, it is competent for the chancellor to frame a decree requiring development operations to begin within a time fixed, upon pain of forfeiture. Each case must, of course, stand upon its own facts. In each case the chancellor must determine whether the particular facts justify the particular relief granted. The evidence fully heard in this case, consisted, in part, of testimony of plaintiffs' witnesses that reasonably prudent operators not only would, but had actually, within the period of time in controversy, offered to, drill plaintiffs' property.

Appellants, bringing within the compass of a single view not only the leases to the 5,000 acres of land they held under appellees, but the 75,000 acres they held under others, and urging that they had a right to proceed with ratable and proportionate development of the whole block, insist that the District Judge's view, in focusing upon appellees' lease, was too foreshortened. They insist, in short, that the evidence as to their holdings in that territory, taken and viewed as a whole, does not support the finding that from March to December, 1934, there was undue delay on their part in drilling appellees' property. They argue that the District Judge, in concluding that appellants were remiss in their obligations to develop, must have taken into consideration the time elapsed between December, 1934, and the time of the decree. They insist that if he did so, he erred, for upon general princi-

542

ples,[1] and by the express terms of the lease itself, appellees' actions in attempting in December, 1934, to forfeit the lease, and in thereafter bringing this suit, excused appellants from further development until the controversy appellees had raised was finally settled.

We cannot agree with appellants that the evidence is insufficient to support the District Judge's findings that a reasonably prudent operator in appellants' position, acting in good faith, would have prosecuted additional development between March and December, 1934, and his conclusion that appellees should have the relief awarded them in the decree. But if we could agree with them, that standing alone, the evidence as to defendants' attitude and activities between March and December, 1934, would not support the decree, appellants would stand no better. The evidence as to appellants' attitude toward and views regarding the development of appellees' leases as a part of and in connection with their whole body of land was fully developed on the trial, not only as appellants entertained them between March and December, 1934, but as they were held after that date and up to the time of the trial. This attitude and these views make it plain that appellants believed they could hold the land for an indefinite period without operations on it while they are developing the balance of their tract, though the other leases are wholly independent of and have no connection with appellees' lease.

██ We think it plain that the attitude of appellees in attempting to forfeit the lease excused appellants from further development, as concerns its forfeiture, until the controversy was ended. But we think it equally plain that in framing his decree it was competent for the District Judge to take into consideration the whole evidence as to appellants' attitude and views toward developing appellees' land, and the facts as to development in that vicinity, not only before, but after December, 1934.

The appeal brings the whole case up Upon a consideration thereof we modify the decree, and give the appellants 90 days from the going down of our mandate, within which to begin operations. As modified, the decree is affirmed, with costs against appellants.

---

[1] Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801; Morgan v. Houston Oil Co. (Tex.Civ.App.) 84 S.W.2d 312; Brooks v. Arkansas-Louisiana Pipe Line Co., 8 Cir., 77 F.2d 905.

