WHITE *et al. v.* HUNT.

(Division B.   Nov. 23, 1942.)

[10 So. (2d) 539.   No. 35141.]

Howie, Howie & McGowan, of Jackson, for appellants.

W. E. Morse, of Jackson, for appellee.

**Anderson, P. J.,** delivered the opinion of the court.

Appellants White and Bradshaw had an oil and gas lease on forty acres of land in Yazoo County. Appellee Hunt acting on the assumption that their lease had expired obtained a like lease from the common source. Thereupon appellants filed their bill in the chancery court of that county seeking to cancel as a cloud on their title appellee's lease upon the ground that their lease was valid and subsisting when appellee acquired his. The cause was heard on original and amended bills, answers, exhibits, and agreed facts, resulting in a decree in favor of appellee dismissing the cause; from which decree appellants prosecute this appeal.

We have legal questions exclusively to pass on. The main and controlling question is whether or not at the end of the first twelve months of appellants' lease they paid the lessor the amount provided for in the lease for its extension for another twelve months.

The provisions of appellants' lease necessary to have in mind follow:

"If no well be commenced on said land on or before the 5th day of September, 1940, this lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Delta National Bank at Yazoo, which bank and its successors are the lessor's agent and which shall continue as the depository regardless of changes in the ownership of said land the sum of $1.00 per acre (changed to $.50 on account of Federal Land Bank's ownership of half interest in the mineral rights in the lands owned by the lessors), which shall operate as a rental and cover the privilege of deferring the commencement of a

well for twelve months from said date. In like manner and upon like payments or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively. . . '.

"If the estate of either party hereto assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenant hereof shall extend to their heirs, executors, administrators, successors or assigns . . . it is hereby agreed in the event this lease shall be assigned as to a part or as to parts of the above described lands and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said lands upon which said lessee or any assignee thereof shall make due payment of said rental.''

The same provisions apply to appellee's lease. The necessary facts to have in mind are these: Joe Walker and Tindall Walker owned 480 acres of land in Yazoo County; they, and their wives joining them, on September 5, 1939, leased to Carl Jones the oil and gas rights in said lands, the pertinent provisions of which lease are set out above. Through various assignments of the mineral interests covered by said lease the oil and gas rights on the 5th of September, 1940, were held as follows: Carl Jones in 200 acres, W. G. Ray in 80 acres, S. D. Hunter in 40 acres, J. L. Condon in 80 acres, V. V. Ryan in 40 acres, and appellants White and Bradshaw in 40 acres. Neither appellants nor Condon had bored a well on that date. Appellants had failed to pay the $20.00—fifty cents an acre—for the extension of their lease for another twelve months. Condon had erroneously paid $80.00 instead of $40, the amount provided in his lease. Therefore, he had in the depository to his credit the sum of $40, which was $20 more than the amount necessary to be paid for the extension of appellants' lease for

another twelve months. Several months after the 5th of September, 1940, Condon and appellants discovered such overpayment and by agreement between them sought to apply it to the renewal of appellants' lease. Thereupon appellants paid over to Condon $20. That was the first attempt made by appellants to renew their lease.

In the case of Gillespie v. Bobo, 5 Cir., 271 F. 641, the court held as follows, which is correctly set forth in the headnotes:

"In an oil and gas lease, giving lessee the right to drill within one year, otherwise the lease to terminate, a provision that on payment of a stated sum within the year the time for drilling should be extended for six months held to give lessee an option, of which time was of the essence, and on failure to exercise the option within the year lessee's rights held terminated, not by forfeiture, but by termination of the lease in accordance with its terms.

"Under an oil and gas lease, giving lessee the right to drill for the term of one year, with an option to extend the term by payment of a stated sum within the year, the mailing of a check for the sum within the year, which was not received by lessor because incorrectly addressed, held not a valid exercise of the option."

See further Empire Gas & Fuel Co. v. Saunders, 5 Cir., 22 F. (2d) 733; Summers Oil & Gas, Perm. Ed., vol. 3, sec. 551, page 289; Id. sec. 553, page 300.

Appellants did not owe the lessors a debt in order to renew their lease, it was a mere option they held—a privilege which they could exercise or not as they chose. They did not agree to bore a well within twelve months, but agreed that if they did not they would forfeit the rental payment already made. Neither did they agree to renew the lease at the end of the twelve months by paying fifty cents an acre. Under the contract they were simply granted an option to do so if they so desired. Putting it differently, under the lease contract the lessors had no

right to go into court and force the lessees to either bore a well or pay for the extension of their option. The argument on the other side is that if one person pays the debt of another, either by agreement or out of a feeling of charity, the debt is liquidated and can not be collected again. Of course, that is true, but that is not this case. Appellants did not owe the lessors any debt, they simply held an option not an obligation. Suppose appellants had decided not to renew the lease, surely a third person could not bind them by renewing it for them. Therefore, the matter stands exactly as if appellants had attempted to renew the lease several months after their option had expired.

Appellants contend, however, that those principles do not apply here because the lease under consideration is a unit and therefore not divisible. That contention, if sound, means that all and each one of the sub-lessees of the 480 acres of land had the right to exercise the option of renewal for all of them. A complete answer to that contention is the provision of the lease contract itself last copied above. It plainly makes it a divisible contract. As between the different lessees and sub-lessees there were no obligations or duties. The terms of the lease applied to each of them separately and not collectively. Therefore, the case of Broyles v. Gilman (Tex. Civ. App.), 222 S. W. 685, and other authorities relied on by appellants along the same line have no application.

The result is appellants failed to renew their lease by payment of the $20 on or before September 5, 1940, and for that reason appellee acquired a valid lease which prevails over that of appellants.

Affirmed.