BERRY et al. v. TIDE WATER ASSOCIAT-
ED OIL CO. et al.

No. 13285.

United States Court of Appeals
Fifth Circuit.

April 27, 1951.

Rehearing Denied May 18, 1951.

J. R. Buchanan, Ellis B. Cooper, and W. S. Welch, all of Laurel, Miss., for appellants.

Earl T. Thomas, T. Harvey Hedgepeth, Jackson, Miss., Lloyd Armstrong, Houston, Tex., C. W. Sullivan, Hattiesburg, Miss., for respondents.

Before HUTCHESON, Chief Judge, McCORD, Circuit Judge, and WRIGHT, District Judge.

HUTCHESON, Chief Judge.

Brought to cancel, and remove the cloud of, an "unless" oil, gas and mineral lease as to a portion of the land leased which had been assigned to the defendants, the suit sought a decree adjudging that, because of their failure to drill on or develop their assigned portion, the lease as to it had terminated and was of no further effect.

Plaintiffs' primary claim was that, under Mississippi law, upon the assignment of the segregated portion of the land, it became in effect a separate lease, with the result that instead, as before, of one producing well within the primary term of the lease (here five years) sufficing to extend the lease in accordance with its terms as to all the lands described in it, there must be a well drilled on each segregated portion. They urged, therefore, that the fact that the original lessee had drilled a well on the part of the leased land retained by him could not satisfy the obligation of defendants, owners of the assigned portion, to drill on their own tract so as to extend the lease as to their portion beyond the primary term; and that since no well was drilled during the primary term on their assigned portion, the lease as to it was at an end.

A first alternative claim was that if, under the rule prevailing in Texas and, except in Louisiana,[1] generally elsewhere, the bringing in by Richardson of the discovery well was effective to extend the lease beyond the primary term as to all of the leased premises, the payment by Richardson in lieu of production of $200 per year for each well, while, as provided in the lease, there was no market, was not as to defendants the equivalent of production so as to keep the lease alive as to their assigned portion.

A second alternative claim was that if wrong in these two claims and the lease had, by Richardson's well and payments in lieu, been extended as to defendants' assigned portion beyond the primary term, the lease had, as to that portion, nevertheless been terminated and brought to an end by the failure of the defendants to reasonably develop their assigned acreage after production found, amounting either to abandonment or to such conduct as gave rise to the equitable relief of cancellation.

The defenses were: (1) that the bringing in of a well by Richardson on his retained portion and his paying the shut-in gas royalty satisfied the production provision of the lease as to all of the lessees' lands, including the portion assigned to defendants; (2) a denial that they had abandoned the lease or breached the implied covenants for reasonable development so as to warrant its cancellation; and (3) a plea that since, during the pendency of this controversy they had brought in a producing well on their portion of the leased land, no equitable relief was needed or proper.

The case was fully tried to the district court, the defendants offering many witnesses in opposition to plaintiffs' claim that they had either abandoned or failed to prudently develop their portions of the lease, plaintiff offering no evidence in rebuttal.

The trial court agreed with defendants throughout. He found that the bringing in of the well by Richardson and the payment of shut-in gas royalty was a compliance with the drilling and producing obligation of the lease and that it had been extended beyond the primary term not only as to Richardson's retained part of the land but as to the assigned portions as well.

Finding that the evidence did not show abandonment of the lease, he found, too, that it did not furnish any basis for the equitable relief of cancellation for breach of the implied covenants to develop.

Appealing from the judgment for defendants, plaintiffs are here, conceding that in so ruling the district judge followed the rule of law prevailing in Texas and quite generally elsewhere, but insisting that the law of Mississippi is to the contrary. Urging upon us that in White v. Hunt, 193 Miss. 742, 10 So.2d 539, the Supreme Court of Mississippi has taken its stand with Louisiana in holding that, where there is an assignment of a portion of the leased premises, the assignee to hold his assigned portion is obligated to drill his own well, they insist that the judgment must be reversed and here rendered.

In addition, and alternatively, they urge their other claims of abandonment and lapse for failure to develop.

1. Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264.

Finally, they insist that if the district judge was right in holding that the lease was indivisible, the judgment should be reversed and the cause remanded for want of indispensable parties.

Appellees are here urging upon the primary point: that in decision after the decision the Mississippi courts have made it plain that, as to the law of oil and gas, Mississippi, as a new comer, has aligned itself with Texas; that the law in Texas, as well as generally elsewhere, is in accordance with the holding of the trial court; that the well drilled by Richardson was sufficient to extend the lease beyond the primary term; and that, therefore, their portion of the lease did not lapse because of their failure to drill on it.

On the alternative claims of breach of the implied covenant to develop, appellees, pointing to the voluminous evidence that it offered, to the authorities under which it made the offer,[2] and to the fact that, though the burden was on the plaintiffs to make clear proof,[3] plaintiffs offered no rebutting evidence, insist that the district judge's findings were not clearly erroneous but clearly right.

They point out: that plaintiffs at no time demanded of defendants that they drill or quit; that they did not in this suit seek a decree *nisi,* requiring drilling within a time limited upon pain of cancellation; that there was no showing of abandonment, or any which would support a

judgment of forfeiture, Cosden Oil Co. v. Scarborough, 5 Cir., 55 F.2d 634; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27; and that since, pending this controversy, defendants have brought in a producing well, there could be no basis now for a decree *nisi* such as was approved in Amerada Petroleum Co. v. Doering, 5 Cir., 93 F.2d 540, 114 A.L.R. 1385; Hull v. Magnolia Petroleum Co., 5 Cir., 119 F.2d 123, 126, and similar cases.

So pointing, they confidently insist that plaintiffs' claims to relief for breach of the implied covenants are wholly without merit.

A careful study of the record[4] in the light of the cases[5] leaves us in no doubt that appellees are right in this contention. Unless, therefore, appellants can maintain their primary claim: that the assignment made the lease divisible as to the obligation to drill during the primary term; and that, since defendants did not drill during that term on their segregated portion, the lease had terminated; the judgment must be affirmed. For the reasons hereafter stated, we think it plain that this claim cannot be maintained by them.

In seeking to maintain their position, appellants do not at all dispute the contentions of appellees and the conclusion of the district judge: that Mississippi is as completely committed as Texas is to

---

2. Merrill, Covenants Implied in Oil & Gas Leases, 2nd Ed. Chapters IV and VI; Cosden Oil Co. v. Scarborough, 5 Cir., 55 F.2d 634; Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801; Goodwin v. Standard Oil, 8 Cir., 290 F. 92; Texas Pacific Coal & Oil Co. v. Barker, 117 Tex. 418, 6 S.W.2d 1031, 60 A.L.R. 936.

3. Merrill, Covenants Implied in Oil & Gas Leases, 2nd Ed. Sec. 91, pp. 228–229.

4. This shows among other things: that on May 30, 1947, plaintiff Berry executed what is in effect a top lease, thus forbidding operations by defendants. Merrill, supra, Sec. 21, p. 67; Texas Co. v. Curry, Tex.Civ.App., 229 S.W. 643; Shell Oil Co. v. Goodroe, Tex.Civ.App., 197 S. W.2d 395; Amerada Petroleum Co. v. Doering, 5 Cir., 93 F.2d 540, 114 A.L.R. 1385.

It shows, too, that the full and detailed evidence offered by defendants as to the circumstances and conditions existing as to their efforts made to meet them amply supports the findings of the district judge that there was no abandonment of the lease and no grounds for its forfeiture, and that the defendants did not breach the implied covenant to reasonably develop the lands in suit.

5. Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801; Amerada Petroleum Co. v. Doering, 5 Cir., 93 F.2d 540, 114 A.L.R. 1385; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27; Sauder v. Mid-Continent Petroleum Corp., 292 U.S. 272, 54 S.Ct. 671, 78 L.Ed. 1255; Merrill, note 2, supra, Chapt. VII and authorities cited in note 2, supra.

the ownership in place theory as regards minerals; that Mississippi, in formulating its decisions on oil, gas, and mineral questions, has evidenced great respect for Texas decisions dealing with the same or similar matters;[6] and that the Louisiana rule, announced in Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264, and followed *ex necessitate* in Harrell v. United Carbon Co., 5 Cir., 52 F.2d 790, a Louisiana case, is directly opposed to the rule prevailing in all others of the states[7] whose courts have had occasion to pass upon the precise question, the rule, as it is stated in the generally recognized text books in the field of oil and gas law.

Supporting their claim, indeed basing it entirely, on their construction of White v. Hunt, 193 Miss. 742, 10 So.2d 539; they insisted below, they repeat that insistence here: that in and by that decision the Supreme Court of Mississippi, deliberately rejecting the rule prevailing in Texas and generally elsewhere, has elected to range itself with Louisiana; and that, having thus definitely established a rule of property for Mississippi, "we are bound [of course] to follow it".[8]

We are in complete agreement with appellants' conclusion that as to rules of property in Mississippi, we must follow where the Mississippi courts lead. We are in as complete disagreement with the premise on which the further conclusion is rested, that Mississippi has laid down the rule of property for which appellants contend. That premise, stripped to its essentials is that White v. Hunt, which admittedly does not deal with the question for decision here, the obligation of assignees of assigned portions to drill thereon within the primary term, has by implication so clearly foreshadowed for Mississippi the rule of property appellants contend for here, that this court is bound to announce and approve it.

If the matter were *res integra,* if we were without the benefit of the great array of cases and the sound and compelling reasons they put forward in support of a rule of property, in oil and gas leases, the precise opposite of that for which appellants contend, appellants might have a leg to stand on.

If, too, we were without the great body of evidence furnished by the decisions of the Texas and Mississippi courts, that speaking generally the courts of Mississippi and of Texas view the law of oil and gas alike, we might, without too. great presumption, accept appellant's invitation to search for, to find, and to announce as a rule of property for Mississippi, the hidden rule appellants profess to have found lurking in the language of White v. Hunt.

Even in such a case, though, we should hesitate long before undertaking, by construction and interpretation, to distill from one case, so different in its facts and issues from the one for decision here, a rule of property so fundamental and so far reaching and, in our opinion, for common law states so unwarranted, to proclaim it for the State of Mississippi as its binding law.

6. Stokely v. State, 149 Miss. 435, 115 So. 563; Cummings v. Mid-States Oil Corp., 193 Miss. 675, 9 So.2d 648; Koenig v. Calcote, 199 Miss. 435, 25 So.2d 763.

7. Cosden Oil Co. v. Scarborough, 5 Cir., 55 F.2d 634; Pearson v. Black, Tex.Civ. App., 120 S.W.2d 1075; Sinclair Prairie Oil Co. v. Campbell, 5 Cir., 164 F.2d 907; Gypsy Oil Co. v. Cover, 78 Okl. 158, 189 P. 540; Smith v. Gypsy Oil, 130 Okl. 135, 265 P. 647; State ex rel. Shell Petroleum Corp. v. Worden, 44 N.M. 400, 103 P. 2d 124; South Penn Oil Co. v. Snodgrass, 71 W.Va. 438, 76 S.E. 961, 962, 43 L.R.A.,N.S., 848; Cadillac Oil & Gas Co. v. Harrison, 196 Ky. 290, 244 S.W. 669; Wilson v. Purnell, 199 Ky. 218, 250 S.W. 850; Cowman v. Phillips Petroleum Co., 142 Kan. 762, 51 P.2d 988; Wilson v. Texas Co., 147 Kan. 449, 76 P. 2d 779; and such textbooks as Thuss, Texas Oil & Gas (2nd Ed.) Sec. 74, p. 102; 3 Summers Oil & Gas (Per. Ed.) Sec. 512; Glassmire, Oil and Gas Leases and Royalties (2nd Ed.) Sec. 86; Thornton (Willis) Oil and Gas, Vol. 2, Sec. 338; and Professor A. W. Walker, Jr., in his mimeographed text on oil and gas, on page 705.

8. Harrell v. United Carbon Co., 5 Cir., 52 F.2d 790, 791; Guffey v. Smith, 237 U.S 101, 35 S.Ct. 526, 59 L.Ed. 856.

In view of the actual state of the law in Texas, and generally elsewhere, and of the general conformity of Texas and Mississippi decisions, we are in no doubt whatever that, declining to hold that the case of White v. Hunt, lays down for Mississippi the rule of property appellants contend for, we should, on the contrary, declare: that no such rule can be distilled from it; and that there is nothing in White v. Hunt which is at all out of keeping with the decision of the court below on the question presented for decision here, nothing which brings in question anything said there.

All that was for decision in White v. Hunt, all that was decided there, was that where a lease had been assigned in part, the obligation to pay the rents on the assigned portion passed under the terms of the lease to the assignee and upon his failure to pay at the time fixed in the lease it terminated as to that portion.

In support of this decision the Supreme Court of Mississippi cited two Fifth Circuit cases, from Texas, each decided upon the authority of, and in accordance with, Texas law. The reference in the opinion to Broyles v. Gilman, Tex.Civ.App., 222 S.W. 685, 686, on which appellant relies as a repudiation of Texas doctrine, was not so intended. The Broyles case was not disapproved. It was distinguished on its facts which except for the fact that $20 was the rental payment in each case, were entirely different from those in the White v. Hunt case.

In the Broyles case the assigned portion of the lease was, as in the White case, jointly owned. Each of the joint owners, desiring to keep the lease alive, but purporting to pay only the one-half, which, as between them, was due by him, sent in a check for $20.00. One of the checks was dishonored. The other was paid, and the amount was accepted and retained by the lessors who then claimed that because of the dishonored check the lease had lapsed.

The court, pointing out that the total amount due on May 22, 1918, was $20 and that this amount was received by the lessors and retained, rejected this contention saying: "It made no difference to the appellants which one of the assignees paid the rental due May 22, 1918. That was no concern of his. He had the right to insist upon the payment of $20 as a condition precedent to the further extension of the optional rights of the assignees, but the lessors had no right to arbitrarily say by whom the stipulated amount should be paid. The defendant Cohen had the right to insist upon her co-owner paying her share of the stipulated rental, but they filed a joint answer in which they pleaded the said payment of $20 made by the defendant, Cohen, which payment covered the quarterly installment due May 22, 1918, and that by reason of such payment there had been no default in the payment of the installment due on May 22, 1918.

"In view of the payment of this $20 by the defendant Cohen, which was received and accepted by the appellants, the dishonor of the checks of Ruben is of no importance."

In White v. Hunt, neither White nor Bradshaw, his co-owner, paid anything, nor did anybody pay anything for them. What was attempted to be, but was not permitted to be, done there was, by a belated effort set on foot several months after the lease had expired for nonpayment, to avoid its effect, by having the overpayment by mistake of one Condon, as to his separate portion of the leased premises, operate as a kind of *nunc pro tunc* payment for White and Bradshaw who owned entirely separate portions of the lease. The Mississippi court quite correctly held that, under the express provisions of the lease under which White and Bradshaw held, this could not be done.

There remains for decision only the hypothetically urged contention raised after judgment below, that, since its effect is to treat the lease as an indivisible unit, if its basic holding is approved, the Humble Oil Co., a Texas Corporation, is, under Calcote v. Texas, P. Coal & Oil Co., 5 Cir., 157 F.2d 216, 167 A.L.R. 413, and Keegan v. Humble Oil & Refining Co., 5 Cir., 155 F.2d 971, an indispensable

party to the suit, whose presence will destroy diversity and defeat jurisdiction.

 Saying of it, without more, that the cases cited do not support it, indeed, that under their teaching, as explained in Hudson v. Newell, 5 Cir., 172 F.2d 848, 852 and Young v. Powell, 5 Cir., 179 F.2d 147, at page 151, it is fanciful, we reject this contention as wholly without merit.

The judgment was right. It is

Affirmed.