**W. O. SCHOCK, Plaintiff,**

v.

**Sam A. GILPIN and Farm Bureau Oil Company, Inc., a Corporation, Defendants.**

**Civ. A. No. 3226.**

United States District Court
E. D. Illinois.

April 19, 1957.

Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., Kramer, Campbell, Costello & Wiechert, East St. Louis, Ill., for plaintiff.

Kern & Pearce, Carmi, Ill., John M. Ferguson, of Baker, Kagy & Wagner, East St. Louis, Ill., for defendant Gilpin.

Wham & Wham, Centralia, Ill., for defendant Farm Bureau Oil Co.

JUERGENS, District Judge.

Jurisdiction of this Court is founded on diversity of citizenship of Title 28 U.S.C.A. § 1332.

The plaintiff is claiming an oil and gas "override interest" in certain premises in White County, Illinois, described as follows, to wit:

The Northeast Quarter of the Northeast Quarter of Section 3, Township 7 South, Range 9 East, of the Third Principal Meridian; and the West Half of the Southeast Quarter of the Southeast Quarter of Section 34, Township 6 South, Range 9 East, of the Third Principal Meridian, all in White County, Illinois, containing 60 acres more or less

It will be unnecessary to detail any of the facts set forth in the complaint or in the answer which was filed to the complaint by the defendant, for the reason that on the trial of this case the following stipulation was entered into

by and between the parties to this lawsuit which was in words and figures as follows:

"It is stipulated by and between counsel for the defendant, Gilpin, and counsel for the plaintiff, Schock, that the issues in this case are now limited to whether or not W. O. Schock was the owner of an overriding royalty interest in good standing and in full force and effect at the time of his execution of a release in favor of Gilpin dated October 13, 1954, and that in the event and at the conclusion of this litigation, it is determined by the Court that Mr. Schock was the owner of such an interest, in such good standing and force and effect, that the release and clarification so executed by Mr. Schock are terminated, voided, and set aside by agreement so that the same shall have no force and effect.

"The Court: The stipulation provides that if the plaintiff was the owner of the overriding interest, in good standing and in full force and effect at the time that releases were given, if the Court determines that, then the releases are to be set aside by agreement?

"Mr. Pearce: That is correct, your Honor.

"Mr. Schock: We have agreed to further stipulate that production on the 80 acres occurred in September, 1943, and has continued until this date.

"Mr. Pearce That is correct."

Prior to February 16, 1923, Finis Bryant was the owner of the following described real estate, to wit:

### Tract I:

The Northeast Quarter of the Southeast Quarter and the Southeast Quarter of the Northeast Quarter; Section 3, Township 7 South, Range 9 East, of the Third Principal Meridian, White County, Illinois, containing 80 acres, more or less, and also:

### Tract II:

The Northeast Quarter of the Northeast Quarter of Section 3, Township 7 South, Range 9 East, and the West Half of the Southeast Quarter of the Southeast Quarter of Section 34, Township 6 South, Range 9 East, of the Third Principal Meridian, White County, Illinois, containing 60 acres, more or less

On February 16, 1923, Finis Bryant died intestate, leaving Alice Bryant, his widow, and Clarissa Mae Aud, Jennie Bean, Luke Bryant, and Jewell Bryant, as his only children and heirs at law, him surviving, and owning the above described real estate.

Under the statute of descent of the State of Illinois, the above described real estate descended to his four children in equal shares, subject to the rights of the widow, which were later extinguished by her death. At the time of his death there was a trust deed outstanding in favor of C. S. Conger as trustee covering Tract I only which was later assigned to Andrew J. Aud, the husband of the above-named Clarissa Mae Bryant Aud. Jewell Bryant, one of the above-named children, died intestate October 10, 1924, leaving his widow, Helena Bryant, (who later remarried to become Helena Bottioux) and Smith Bryant, Waldo Bryant, Ruth Moomey, Tennie Wiggins, and Mae Hampton as his children and only heirs at law, him surviving, and by the laws of descent of the State of Illinois, Jewell Bryant's one-fourth interest in the above described real estate descended to his widow and to his five named children.

Andrew J. Aud, on December 13, 1926, foreclosed the trust deed and became the purchaser at the Master in Chancery sale and received a Master's Deed for the real estate described as Tract I. This proceeding foreclosed all interests of the heirs of Finis Bryant in the 80-acre tract described as Tract I.

On June 9, 1933, Andrew J. Aud acquired a tax deed for the 60 acres described as Tract II, but he being the husband of a co-tenant of this tract,

acquired no interest as against the co-tenants by the acquisition of this tax deed. This proposition of law needs no citation of authorities.

On June 10, 1936, Andrew J. Aud and his wife, Clarissa Mae Aud, executed and delivered an oil and gas lease for a term of ten years to R. Z. McGowan to Tracts I and II above described who, in turn, assigned the entire leasehold to The Pure Oil Company. After executing this lease, the Auds conveyed by mineral deed a one-fourth interest in the oil and gas in and under Tract I only to R. M. Purdy and by mineral deed to Walter Duncan, Jr., a one-fourth interest in and to all of the oil and gas and other minerals in and under and that may be produced from the real estate described in Tract II only.

During the latter part of 1939, it having been discovered that the Auds had no authority to execute the 1936 oil and gas lease to R. Z. McGowan on Tract II excepting as to the undivided one-fourth interest of Clarissa Mae Aud, H. E. Ledbetter and Floyd Purcell separately began to acquire interest in Tract II only from some of the heirs of Finis Bryant, deceased, and Jewell Bryant, deceased. Through mesne conveyances, on October 31, 1939, H. E. Ledbetter acquired the undivided one-fourth interest of Luke Bryant in Tract II. Floyd Purcell, on November 3, 1939, by quitclaim deed from Jennie Bryant Bean, acquired an undivided one-fourth interest in Tracts I and II, on November 6, 1939, acquired an oil and gas lease for a term of five years from Smith Bryant in Tract II only, on November 3, 1939, acquired an oil and gas lease on Tract II only for a term of five years from Waldo Bryant, and on November 3, 1939, acquired an oil and gas lease for a term of five years on Tract II only from Helena Bottioux, Ruth Bryant Moomey, Tennie Bryant Wiggins, and Mae Bryant Hampton.

On December 7, 1939, Purcell conveyed an undivided one-half interest in the various interests acquired by him and above described to W. O. Schock, the plaintiff in this cause.

At this point, considering the invalidity of the tax deed above described, the title to Tract II above described was vested as follows:

Andrew J. and Clarissa Mae Aud as joint tenants with rights of survivorship and not as tenants in common an undivided interest subject to the mineral deed to J. Walter Duncan, Jr., and subject to the lease to The Pure Oil Company;

Helena Bryant Bottioux, Smith Bryant, Waldo Bryant, Ruth Bryant Moomey, Tennie Bryant Wiggins (Norfleet), Mae Bryant Hampton (Wilson), each an undivided interest subject to oil and gas lease in favor of Floyd W. Purcell;

H. E. Ledbetter and Floyd W. Purcell, an undivided interest in fee and leasehold;

W. O. Schock an undivided interest in fee and leasehold;

Walter Duncan, Jr., an undivided interest in the minerals subject to an oil and gas lease owned by The Pure Oil Company; and

The Pure Oil Company in an oil and gas lease.

On December 18, 1939, a partition suit was filed in the Circuit Court of White County, Illinois, in Chancery under No. 39–2126 wherein Floyd W. Purcell, Audrey V. Purcell, H. E. Ledbetter, Lois G. Ledbetter, Helena Bottioux, Gerald Bottioux, Smith Bryant, Anna Bryant, Waldo Bryant, Tennie Wiggins, Mae Hampton, Ruth Moomey, and Charles Moomey were plaintiffs, and Andrew J. Aud, Clarissa Mae Aud, The Pure Oil Company, and J. Walter Duncan, Jr., were named as defendants. (The statement, brief, and argument of the defendant, Sam A. Gilpin, lists the above as parties plaintiff and defendant. A certified copy of the Stipulation and Agreement entered into and which forms the basis of the decree by the Circuit Court of White County, Illinois, which

confirmed the Stipulation and Agreement entered into by the parties and made said Stipulation and Agreement a part of the decree lists W. O. Schock as party plaintiff, in addition to the above, and Herschel B. Aud, Dorothy Mae Aud, Leota Gingrich, and Raphael Gingrich as parties defendant, in addition to the above. The decree of the Circuit Court of White County, Illinois, a copy of which has been made a part of the files in this case, lists the names of the plaintiffs and defendants as first set out above.)

A second amended complaint was filed in which plaintiffs ask that a decree be entered that Clarissa Mae Aud and her children hold the interests in Tract II, if any, received by the tax deed to Andrew J. Aud in trust for the present owners of the premises as the same may be decreed by the Court and that a division and partition of Tract II be made under the direction of the Circuit Court of White County between the parties hereto in accordance with their respective rights and interests and that the Court will adjudicate the oil and gas leasehold interests and royalty interests heretofore separated and conveyed as set forth in the bill, so that the same may follow the interests acquired by the lessors in the surface of said premises. Tract I was not described in the complaint or the amended complaints.

On April 10, 1942, a "Stipulation for Decree" signed by all of the above described parties was entered into by which they agreed and requested the Circuit Court of White County, Illinois, "to enter a decree of partition based upon the above stipulation and that in and by such decree such Court shall ratify and confirm the various titles created, ratified and confirmed by the parol partition of all the parties, as evidenced by this stipulation."

Pursuant to the above Stipulation and Agreement entered into by the respective parties the Circuit Court of White County, Illinois, by its decree dated May 23, 1942, found that it "has jurisdiction of the subject matter hereof and of the parties hereto."

The decree made the further pertinent findings and orders as follows:

"The Court further finds that all the parties to this cause did on April 10, 1942, execute a stipulation for settlement of this cause and thereby agreed among themselves as to the ownership of the premises in question, a copy of such stipulation being hereto attached and made a part of this decree.

"And this cause now coming on for final hearing upon the pleadings above recited and the stipulation above described, and the Court having heard evidence and being fully advised in the premises finds that said stipulation is fair, reasonable and just and the same is hereby approved and confirmed.

"It is, therefore, ordered, adjudged, and decreed by the Court that the premises described in the complaint as:

"The North East Fourth of the North East Quarter of Section Three (3), Town Seven (7); Range Nine (9) East of the Third P. M.; and the West Half of the South East Fourth of the South East Fourth of Section Thirty-four (34), Town Six (6) South, Range Nine (9) East of the Third P. M., all in White County, Illinois, containing 60 acres, more or less,

is owned by the parties to this cause as follows:"

The Court then disposes of the surface as being vested in Clarissa Mae Aud alone, subject to oil and gas leasehold interests outstanding.

The Court then disposed of the "Leasehold Interests" as follows:

"(a) That the oil and gas lease, originally executed by Andrew J. Aud and Clarissa Mae Aud, his wife, to R. Z. McGowan, dated June 10, 1936, recorded in Book 128 of Deeds

at page 183, as assigned by the lessee to The Pure Oil Company, the present owners thereof, by assignment dated March 18, 1937, recorded in Book 130 of Deeds at page 124, in the Recorder's Office of White County, Illinois, is a valid and subsisting oil and gas lease, binding upon all of the interests in said premises, and binding upon all the signers hereof, the same as if originally executed by them; and that the title to such leasehold interest as set forth in said lease, is and shall be vested as follows: an undivided ⅓ interest therein in the Pure Oil Company; an undivided ⅓ interest therein in W. O. Schock; and an undivided ⅓ interest therein in Floyd W. Purcell.

"(b) That the title to the lessee's interest in the oil and gas lease, executed by Helena Bottioux, Gerald Bottioux, her husband, Tennie Wiggins, Mae Hampton and Ruth Bryant in favor of Floyd W. Purcell dated November 6, 1939, and recorded in Book 148 of Deeds at page 109 in the Recorder's Office of White County, Illinois, is and shall be vested as follows: An undivided ⅓ interest therein in The Pure Oil Company; an undivided ⅓ interest therein in W. O. Schock; and an undivided ⅓ interest therein in Floyd W. Purcell. This lease shall be merged in the lease to The Pure Oil Company mentioned at (a) above.

"(c) That title to the lessee's interest in the oil and gas lease, executed by Smith Bryant and Anna Bryant, his wife, in favor of Floyd W. Purcell, dated November 6, 1939, recorded in Book 148 of Deeds, at page 137, in the Recorder's Office of White County, Illinois, is and shall be vested as follows: An undivided ⅓ interest therein in The Pure Oil Company; an undivided ⅓ interest therein in W. O. Schock; and an undivided ⅓ interest therein in Floyd W. Purcell. This lease

shall be merged in the lease to The Pure Oil Company mentioned at (a) above.

"(d) That the title to the lessee's interest in the oil and gas lease, executed by Waldo E. Bryant, in favor of Floyd W. Purcell, dated November 3, 1939, recorded in Book 148 of Deeds, at page 286, in the Recorder's Office of White County, Illinois, is and shall be vested as follows: An undivided ⅓ interest therein in The Pure Oil Company; and an undivided ⅓ interest therein in W. O. Schock; and an undivided ⅓ interest therein in Floyd W. Purcell. This lease shall be merged in the lease to the Pure Oil Company mentioned at (a).

"(e) Notwithstanding the existence of the above four leases there shall be but one delay rental which shall consist of One Dollar ($1.00) per acre per year, and shall be paid at the time and in the manner mentioned in the lease from Clarissa Mae Aud and Andrew J. Aud to R. Z. McGowan, dated June 10, 1936, recorded in Book 128 of Deeds on page 183, described at Paragraph a above."

Paragraphs (b), (c), and (d) under the heading entitled "Leasehold Interests" of the Decree of the Circuit Court of White County, Illinois, contain this sentence, "This lease shall be merged in the lease to The Pure Oil Company mentioned in (a) above." The lease to The Pure Oil Company is the assignment of the oil and gas lease from Andrew J. Aud and Clarissa Mae Aud, his wife, to R. Z. McGowan, dated June 10, 1936, for a primary term of ten years. The parties, by their stipulation, agreed and the Court by its decree ordered that the terms of the 1939 leases be co-extensive and expire on the same date as the term of the 1936 lease; namely, on June 10, 1946. The decree of the Circuit Court of White County, Illinois, then provided that there should be only one delay rental under all of the above

leases which should be paid at the time and in the manner mentioned in the 1936 lease.

Production of oil on Tract I began in September, 1943, and has continued to date. By quitclaim deed dated June 28, 1943, and recorded July 23, 1943, in Book 152 of Deeds at Page 449, in the records of the Recorder's Office of White County, Illinois, W. O. Schock and his wife, Lida C. Schock, conveyed all their undivided ½ interest in Tract I to W. C. McBride, Inc. Consequently, when production started on Tract I, the plaintiff, W. O. Schock, had no interest of any kind in Tract I.

The 1936 and 1939 leases as "merged" by the decree of the Circuit Court of White County, Illinois, expired on June 10, 1946, unless oil and gas were produced from Tract II prior to that time. Drilling began on the Northeast Quarter of the Northeast Quarter of Section 3, Township 7 South, Range 9 East, of the Third Principal Meridian, White County, Illinois, being a portion of Tract II, on October 11, 1945, and on November 1, 1945, was plugged as a non-producer. Between this date and the expiration of the "merged" 1936 and 1939 leases there were no further developments. Therefore, the "merged" 1936 and 1939 leases by their terms expired.

During 1954 Sam A. Gilpin, the defendant herein, secured new oil and gas leases from the parties in interest as to Tract II, and on July 29, 1954, assigned these leases, reserving unto himself an overriding royalty, to E. Paul du Pont, trustee. Under these leases oil was produced during the month of August, 1954.

The plaintiff now contends that by the decree of the Circuit Court of White County, Illinois, the 1936 and 1939 leases were "merged" as to Tracts I and II and because of the decree merging the leases the production of oil in September, 1943, on Tract I preserved his rights as to Tract II and that he is now entitled to a portion of the oil recovered

from Tract II from the production which began in August, 1954.

It will be noted that the stipulation and the subsequent decree of the Circuit Court of White County, Illinois, which incorporated the stipulation by reference dealt with and described only Tract II and never at any time mentions or describes the real estate described as Tract I. By what rule of law can the plaintiff rely on the development of Tract I, in which on June 28, 1943, he abandoned all interest, to perpetuate the lease of 1936 on Tract II in which he did have an interest but which expired on June 6, 1946? Plaintiff's contention is that the assignment from himself to the defendant dated June 21, 1945, reserving unto himself an overriding royalty interest entitles him now to such overriding interest in the production which began in August, 1954, some nine years after the expiration of the 1936 leases under which the plaintiff acquired the interest which he assigned on June 21, 1945, under which there was no production prior to the expiration of the lease, by the terms thereof.

The sole question for decision in this case is whether or not the production from Tract I has perpetuated the lease on Tract II, created by the Circuit Court of White County, Illinois, so that the plaintiff, W. O. Schock, can claim an interest in the production of oil in August, 1954, on Tract II, had under new leases acquired from the heirs of Finis Bryant, deceased, and from the mesne grantees of the heirs of Finis Bryant, deceased, some nine years after the expiration of the primary term of the 1936 leases which expired on June 10, 1946.

The decree of the Circuit Court of White County, Illinois, "merged" the 1936 and 1939 leases. 57 C.J.S. Merger page 1068, says:

" 'Merger' is defined generally as the absorption of a thing of lesser importance by a greater, whereby the lesser ceases to exist, but the greater is not increased; an ab-

sorption or swallowing up so as to involve a loss of identity and individuality."

By the decree of the court, which was based upon the agreement of the parties, the 1939 leases were merged in the 1936 leases. The identity of the 1939 leases as such was lost. They were merged in the 1936 leases which, by the agreement and the terms of the decree, extended the 1939 leases for a period of ten years from 1936. This merger could affect only the real estate described in the Stipulation and Agreement heretofore referred to and the real estate described in the decree of the Circuit Court of White County, Illinois, and referring to both the Stipulation and Agreement and the decree, one finds that the only real estate described in both of those instruments is the real estate described as Tract II. Therefore, the Court is of the opinion that neither the Stipulation and Agreement nor the decree had any effect and could not have any effect on the real estate described as Tract I and the bringing in of a producing oil well on Tract I could in no way have the effect of extending the primary term as granted by the 1936 leases as to Tract II. Numerous cases have been cited by the respective parties, but in reading the cases, it will be found that they are not in point and the Court does not deem it necessary to unduly lengthen this opinion by analyzing each case.

In the case of Meeks v. Taylor, 5 Cir., 138 F.2d 458, being one of the cases cited, the facts are altogether different and the principles announced there cannot be applied to the case at bar. The cited case was a suit by a wife to cancel as a cloud on her title, a recorded oil lease which was signed with her name but which she alleged was not executed by her. The court held that by subsequent action she had ratified the lease and that the lease, while in three tracts, is entire and not severable.

In Eagle Oil Co. v. Sinclair Prairie Oil Co., 10 Cir., 105 F.2d 710, three successive owners executed and delivered three successive oil and gas leases to three successive lessees. After some litigation and by agreement of the parties, the three leases were merged under one ownership. The facts in this case are different from and the holding of the court is not helpful to the decision in the case under consideration.

In Berry v. Tide Water Associated Oil Co., 5 Cir., 188 F.2d 820, a suit was filed to cancel an assignment of a portion of the lease because no well was drilled on such assigned portion within the time provided for in the lease although the original lessee had brought in a producing well on his retained portion within the time provided. This was a case decided in the State of Mississippi and the court held that Mississippi is as completely committed as Texas to the ownership in place theory as regards minerals. The facts and applicable law are different from the case at bar.

Cosden Oil Co. v. Scarborough, 5 Cir., 55 F.2d 634, 639, was an appeal from a decree finding appellant, defendant below, in default in the performance of implied covenants to prosecute with reasonable diligence the development for oil and gas of a tract of 400 acres of land assigned to it by the lessee out of a tract of 10,254 acres and directing, upon pain of cancellation, that it proceed on terms fixed in the decree to drill at least one well thereon. The primary term was for ten years and provided for the payment of delay rentals for each six months' period during the primary term until the commencement of the drilling. The court held that whether a contract is entire or severable depends primarily upon the purpose and intent of the parties, to be derived from the language used and the subject matter and purpose of the contract in the light of ordinary rules of construction. Whether, then, a particular contract under review is divisible in whole or in part as to any or all of its terms must be determined as to each contract, by the terms

478

of that contract and said, "We do not hold that appellant may indefinitely postpone operations upon the property, depriving appellee of the opportunity to develop, cause it to be developed. We merely hold that under the evidence before us, there being no threat of drainage, no proof by way of opinion evidence or of offers to drill the property, that development of it could be other than at a loss, no proof that an ordinarily prudent person would, under the conditions, develop it, proof merely of appellant's delay in commencing drilling operations, from October, 1928, until this suit was brought, * * * is not sufficient basis for the decree. * * * The case standing thus, appellant may neither be deprived of his lease for not having drilled on it, nor required to engage in imprudent and wasteful operations thereon."

■ This cause being in this court as a diversity case, the Court is under the holding of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, required to apply the law of Illinois in deciding the questions of law involved herein. So far as the Court has been able to determine, the questions involved in this case are ones of first impression in the State of Illinois. The defendant, in his Statement, Brief, and Argument, says: "There are no Illinois decisions, or decisions in any of the other states, adjudicating the question." And counsel for the plaintiffs have cited no case to this Court from any jurisdiction involving the precise question for determination in this case.

From the testimony heard in open court and from an examination of the exhibits introduced and admitted, the Court finds: (1) that the decree of the Circuit Court of White County, Illinois, dealt with Tract II only and could have no effect on the title to Tract I; (2)

that the plaintiff, W. O. Schock, had conveyed all his right, title, and interest in and to Tract I by quitclaim deed on June 28, 1943, and had no right, title, or interest in any of the real estate described under Tract I during September, 1943, when a producing well was brought in on Tract I; (3) that the decree of the Circuit Court of White County, Illinois, did not and could not have the effect of granting an extension of time for the drilling of a well on Tract II when production was started on Tract I; (4) that on October 13, 1954, when the plaintiff, W. O. Schock, executed a release in favor of Sam A. Gilpin, the defendant herein, he was not the owner of an overriding royalty interest in good standing and in full force and effect; and (5) that plaintiff, W. O. Schock, does not claim and has never claimed any interest in Tract I after his conveyance thereof by quitclaim deed on June 28, 1943, nor has he claimed nor does he claim any retained benefits by reason of his at one time having had an undivided interest in Tract I.

■ The Court holds that leases on separate and distinct tracts of land to which there is no unity of mineral ownership, no common leasehold interests and no unity of time of acquisition of interest are not related one to the other to the extent that oil production on the one will hold and keep alive the lease on the other beyond the primary term thereof. The Court, therefore, finds and so holds that the plaintiff, W. O. Schock, was not the owner of an overriding royalty interest in good standing and in full force and effect at the time of his execution of the lease in favor of Sam A. Gilpin, defendant, dated October 13, 1954.

Counsel will prepare and submit an order in accordance with the views herein expressed.